IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


FRED REYNOLDS,
        Plaintiff,

vs.                                                      Case No. 4:04cv95/RV/EMT

UNITED STATES OF AMERICA,
UNITED STATES MARSHALS SERVICE,
and DEPUTY MARSHAL FRANK YOUNG,
        Defendants.
_____/

### REPORT AND RECOMMENDATION

Plaintiff sues the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671,
*et seq.*, for negligence during transportation by the United States Marshals Service as a federal
prisoner (Doc. 14).  He also sues Deputy United States Marshal Frank Young individually for
violation of the Eighth Amendment, which the court construes as brought under Bivens v. Six
Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d
619 (1971)[1] (Doc. 14).[2]  Finally, Plaintiff sues the United States Marshals Service ("USMS"),
apparently both for negligence and for violation of the Eighth Amendment.

Defendant filed a motion to dismiss or for summary judgment, and a statement of undisputed
material facts (Docs. 47, 53).  Plaintiff has filed two responses (Docs. 51, 56).

---

[1]Bivens recognized a private right of action for money damages against federal actors that engaged in alleged
violations of the Constitution or laws of the United States.  403 U.S. at 397, 91 S.Ct. at 2005.

[2]The United States moved that it be substituted for Defendant Young with respect to the claim of negligence
pursuant to 28 U.S.C. § 2679(b)(1) and (d)(1), by operation of law (Doc. 24).  That motion was granted (Doc. 25).  The
United States may not be substituted for the Eighth Amendment claim individually against Defendant Young.  28 U.S.C.
§ 2679(b)(2)(A).

I.      PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on June 9, 1999, in Franklin County, Florida, he was being transported as a federal prisoner by the USMS in a van (Doc. 14 at 7 ¶ 1). He asserts that the van did not have seat belts for the prisoners, and he was not secured by a seat belt (*id*. ¶ 2). He alleges that the van was operated "at an exceedingly high rate of speed and in a reckless manner," "ran off the highway," and threw him about in the interior of the van, causing bodily injuries (*id*. ¶ 3). Plaintiff states he suffered injury to his spine at the L5-S1 level (*id*). He asserts claims based upon negligence and the Eighth Amendment, and seeks monetary damages in the amount of ten million dollars (Doc. 14 at 8).

II.     SUMMARY JUDGMENT STANDARD

To prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id. Accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). Further, Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. Celotex, 477 U.S. at 324; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is

a genuine issue for trial.'"), *cert. denied*, 522 U.S. 1126 (1998) (quoting <u>Celotex</u>, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(c), (e))); <u>Hammer v. Slater</u>, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to Plaintiff. <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); <u>Jones v. Cannon</u>, 174 F.3d 1271, 1282 (11th Cir. 1999).  A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56; <u>Celotex</u>, 477 U.S. at 322.

In the instant case, Plaintiff filed a response to Defendant's motion for summary judgment before the court had an opportunity to advise him as to his responsibilities in responding to a motion for summary judgment (Doc. 51).  After Defendant corrected a defect in the motion for summary judgment (failure to file a statement of allegedly undisputed material facts (*see* Docs. 52, 53)), the court notified Plaintiff that he had approximately thirty days (i.e., on or before August 31, 2005) to file a response to Defendants' motion (*see* Doc. 54).  The court explained that in responding to the motion, it was Plaintiff's responsibility to come forward with acceptable evidentiary material, including sworn affidavits, sworn documents, or other evidence indicating the existence of a genuine issue of material fact (*id*).  Plaintiff was advised that sworn affidavits offered in opposition to the motion must be based on personal knowledge, set forth such facts as would be admissible into evidence, and affirmatively show that the affiant is competent to testify to the matters stated therein (*id*.).  Additionally, Plaintiff was advised that because Defendant submitted a separate statement of undisputed material facts, Plaintiff must submit, in addition to submitting the sworn evidentiary material, a separate statement of facts to which Plaintiff contends there <u>is</u> a genuine issue of fact (*id*.).  Plaintiff was advised that summary judgment would be granted if the pleadings and sworn evidentiary material showed that there was no genuine issue as to any material fact and that Defendants were entitled to judgment as a matter of law (*id*.).  Finally, Plaintiff was advised that the court would take the motion for summary judgment under advisement on August 31, 2005, and that Plaintiff must file all argument and evidence in opposition to the motion before that date (*id*.).

III.    UNDISPUTED FACTS

On June 9, 1999, Deputy United States Marshal Frank Young was driving a van in which Plaintiff, then a federal prisoner, was being transported (Doc. 47, Exhibit B, Affidavit of Frank Young ¶¶ 5-8).  Young was driving north on Franklin County Road 65 at or below the posted speed limit of 55 miles per hour (Young Aff. ¶ 8).  As Young approached an intersection with a county maintained dirt road, he saw another vehicle on the dirt road traveling west to east fail to stop at the stop sign at the intersection (Young Aff. ¶¶ 9-11).  When Young realized that the eastbound vehicle was not slowing enough to stop, he took his foot off the accelerator and started to slow the van (Young Aff. ¶ 11).  The eastbound vehicle entered the path of the van, and Young drove off the road onto the shoulder to avoid a collision (Young Aff. ¶ 12).  Young was driving at a speed of approximately 20 to 30 miles per hour when he drove onto the shoulder to avoid hitting the other vehicle, as the other vehicle "took up the entire road" (id).  There was no collision (Young Aff. ¶ 14).  Young noticed that the vehicle had stopped in the middle of the road and was concerned that the driver was experiencing a medical problem, therefore, he approached the other driver on foot (Young Aff. ¶¶ 12, 13).  When Young returned to the van, all of the prisoners were in their seats and Plaintiff complained that his knee hurt (Young Aff. ¶ 15).  Young was aware that the van was not equipped with safety belts (Young Aff. ¶ 17).  He had received training that demonstrated that the buckle of a seat belt could be used to remove handcuffs (id.).

Sixto Boyer, another Deputy Marshal, was in the van with Deputy Marshal Young (Doc. 47, Exhibit C, Affidavit of Sixto Boyer ¶ 5).  Deputy Boyer states that the van was traveling at or below the speed limit of 55 miles per hour (Boyer Aff. ¶¶ 8, 18).  Deputy Boyer confirms the above statements of fact made by Deputy Young in his affidavit and states that he, too, received training demonstrating that seat belt buckles could be used to remove handcuffs (Boyer Aff. ¶¶ 5-17).

The USMS "is responsible for the safe, secure transport of pretrial detainees, convicted prisoners, and prisoners within the custody of the United States Marshals or the United States Bureau of Prisons" (Doc. 47, Exhibit A, Affidavit of Chief Deputy United States Marshal Leslie A. Moe ¶ 4).  The USMS is also responsible for the safety of the public (id.).

In his affidavit, Chief Deputy Marshal Moe states he is not aware of any statute, regulation, directive, or policy manual mandating that the Marshals Service use seat belts when transporting

prisoners (Moe Aff. ¶ 5).  The Marshals Service Manual required the use of seat belts prior to 1987

(Moe Aff. ¶ 6).  However, due to a growing concern that prisoners could use seat belts to break

handcuffs, and that the use of safety belts posed a danger to Marshals due to the close proximity of

Marshals to prisoners during the securing and unlatching of safety belts, the mandatory use of safety

belts for prisoners was discontinued in the revision of the Manual in 1987 (*id.*).  Since then, the use

of seat belts has been discretionary for the Marshal of each judicial district (*id.*).  Chief Deputy Moe

states:

> Each United States Marshal must balance the risk of prisoner escape and the safety
> of employees, the public, and other prisoners within a transport vehicle against the
> risk of injury to a prisoner resulting from the non use of seat/safety belts.  This
> balancing and the ultimate choice is grounded in social policy.  To my knowledge,
> in balancing these risks, the Northern District of Florida and other United States
> Marshal offices have made the decision not to use seat/safety belts to restrain
> prisoners.

(*id.*).  Chief Deputy Moe states that the Marshal of the Northern District of Florida has determined

that "the risk of escape, coupled with the risks of potential harm to the public, other prisoners and

Deputy United States Marshal[s] involved in transports outweighs the risk of serious injury to

prisoner passengers . . . ." (Moe Aff. ¶ 10).

IV.     ANALYSIS

      A.     Negligence Claims Under Federal Tort Claims Act

          1.     Lack of Seat Belt and Discretionary Function Exception

     Defendant first argues that the court does not have subject matter jurisdiction to consider

a claim based upon the lack of seat belts in the van.  Defendant contends sovereign immunity has

not been waived for this as a premise for liability because the decision whether to provide seat belts

was a decision in the exercise of a discretionary function pursuant to 28 U.S.C. § 2680.  That statute

provides an exception for a claim based upon:

> an act or omission of an employee of the Government exercising due care . . . based
> upon the exercise or performance or the failure to exercise or perform a discretionary
> function or duty on the part of a federal agency . . ., whether or not the discretion
> involved be abused.

28 U.S.C. § 2680(a).

The Eleventh Circuit has set forth the following two-part test for applying the discretionary function exception:

> First, we ask whether the act "involv[es] an element of judgment or choice." U.S. v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quoting Berkovitz v. U.S., 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)); Hughes v. U.S., 110 F.3d 765, 767 (11ᵗʰ Cir. 1997).  "[I]f a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,'" there is no judgment or choice involved.  Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273 (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958-59); see also Phillips v. U.S., 956 F.2d 1071, 1076 (11ᵗʰ Cir. 1992) ("Where there exists a mandatory responsibility, there is no room for a policy choice.").  The inquiry focuses on "whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner."  Hughes, 110 F.3d at 768. A decision will be subject to the exception unless "'a federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard.'"  Id. (quoting Autery v. U.S., 992 F.2d 1523, 1529 (11ᵗʰ Cir. 1993)).
>
> If the conduct does "involv[e] an element of judgment or choice," we then look at "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'"  Gaubert, 499 U.S. at 322-23, 111 S.Ct. at 1273 (quoting U.S. v. Varig Airlines, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984)).  The exception is intended "to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'"  Id. (quoting Varig Airlines, 467 U.S. at 814, 104 S.Ct. at 2765).  Thus, "when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'"  Gaubert, 499 U.S. at 323, 111 S.Ct. at 1274 (quoting Berkovitz, 486 U.S. at 537, 108 S.Ct. at 1959).
>
> Under this second-prong of the test we look at whether the questioned act is "'susceptible to policy analysis.'"  Hughes, 110 F.3d at 768 (quoting Powers v. U.S., 996 F.2d 1121, 1125 (11ᵗʰ Cir. 1993)).  The exception does not require there to have been actual "weighing of policy considerations."  Hughes, 110 F.3d at 768.  Nor is it limited to decisions at the policy or planning level; it may include day-to-day management.  Gaubert, 499 U.S. at 325, 111 S.Ct. at 1275; Hughes, 110 F.3d at 768. We focus on "'the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one we would expect inherently to be grounded in considerations of policy.'"  Autery, 992 F.2d at 1530-31 (quoting Baum v. U.S., 986 F.2d 716, 720-21 (4ᵗʰ Cir. 1993)).  If the decision is inherently one allowing discretion, we presume that the act was grounded in policy whenever that discretion is employed.  Gaubert, 499 U.S. at 324, 111 S.Ct. at 1274; Hughes, 110 F.3d at 768.

OSI, Inc. v. United States, 285 F.3d 947, 950-51 (11ᵗʰ Cir. 2002).

In the face of a factual challenge to subject matter jurisdiction, the burden is on Plaintiff to prove that jurisdiction exists. *Id.* at 951 (citations omitted). Thus, because Defendants have asserted lack of subject matter jurisdiction, Plaintiff must prove that the discretionary function exception does not apply to the failure to provide safety belts. *Id.*

In the instant case, the decision of the Marshal in the Northern District not to provide safety belts for prisoners involved an element of judgment or choice. The federal statutes and regulations are silent as to the use of safety belts for federal prisoners during transport in government vehicles. Additionally, the administrative policies of the USMS do not require the use of safety belts for prisoners; thus, each district office has discretion as to whether to use safety belts for prisoners. In the absence of a federal statute, regulation, or policy requiring the USMS to use safety belts for prisoners during transport, the first part of the two-part test is satisfied.

Furthermore, the second prong of the discretionary function test is met. Each district office must balance security concerns posed by the use of safety belts, including the risk of prisoners escaping and the danger to Deputy Marshals by being in close proximity to prisoners during the securing and unlatching of safety belts, against the risk of injury to prisoners by not using the belts. The decision of the Marshal for the Northern District as to whether to use safety belts is inherently grounded in social policy considerations of providing security to the public and employees of the USMS and protecting the safety of prisoners. Thus the failure to provide safety belts was based upon the exercise of a discretionary function on the part of the USMS. Accordingly, the claim against the United States and the USMS regarding the failure to provide safety belts is precluded by the exception to the waiver of sovereign immunity provided in section 2680(a) of the FTCA.

2.      Negligent Operation of Vehicle

In addition to Plaintiff's claim that the United States was negligent for failing to provide safety belts, Plaintiff seeks to hold the United States and USMS liable for Deputy Marshal Young's alleged negligent operation of the transport vehicle.

> The Federal Tort Claims Act was "designed to provide redress for ordinary torts recognized by state law." Ochran v. United States, 273 F.3d 1315, 1317 (11th Cir. 2001) (internal quotation and citation omitted). As the alleged tort here occurred in Florida, Florida tort law applies. "To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that

the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001). Stone v. United States, 373 F.3d 1129, 1130 (11th Cir. 2004). In order to show that Defendant Young breached his duty of care, Plaintiff must show that Young failed to use "reasonable care" in operating the van. Florida Standard Jury Instructions in Civil Cases, Chapter 4, § 4.1. Reasonable care is "that degree of care which a reasonably careful person would use under like circumstances." *Id.*

In the instant case, Plaintiff alleges Defendant Young breached his duty of care by operating the van at "an exceedingly high rate of speed" and steering the vehicle off the road (Doc. 14 at 7). Defendants submitted two affidavits attesting that Deputy Marshal Young was driving at or below the posted speed limit (Doc. 47, Young Aff. ¶ 8, Boyer Aff. ¶ 8). The affidavits further state that when it appeared that the driver of the other vehicle was not slowing enough to properly stop at the stop sign, Young decreased his speed to 20-30 miles per hour and moved to the shoulder of the road to avoid a collision (Young Aff. ¶¶ 9-12, Boyer Aff. ¶¶ 9-12). While Plaintiff alleges that the Deputy Marshal Young drove the van at "a high rate of speed approaching one hundred miles per hour" and drove off the roadway (*see* Doc. 51), Plaintiff submitted no sworn affidavits or other Rule 56 material with his response (Doc. 56). Thus, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant Young was operating the van at a rate of speed higher than the posted speed limit. Furthermore, Plaintiff has failed to establish a genuine issue of material fact as to the reason and manner Defendant drove the van off the roadway, namely that he decreased the speed of the van to 20-30 miles per hour and moved to the shoulder to avoid colliding with a vehicle that failed to stop at a stop sign at an intersecting roadway.

The next issue is whether the undisputed facts show that Defendants are entitled to judgment as a matter of law. The undisputed facts show that Deputy Marshal Young operated the van with a degree of care that a reasonably careful person would use under like circumstances. Reasonably careful persons operate vehicles at or below the posted speed limit. Furthermore, a reasonably careful person would have altered the speed of his or her vehicle and directed the vehicle off the roadway if another vehicle appeared to be approaching a stop sign at an intersecting roadway at a speed too high to stop and was using the entire road. In light of Plaintiff's failure to show that

Deputy Marshal Young violated any traffic laws or otherwise operated the vehicle in a manner different from a reasonably careful person, Plaintiff will be unable to prove at trial that Deputy Marshal Young breached his duty of care.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's remaining negligence claim under the Federal Tort Claims Act.

      B.     Eighth Amendment Claims

Plaintiff also claims that the USMS's failure to provide safety belts and Deputy Marshal Young's conduct in operating the van violated the Eighth Amendment (Doc. 14 at 8).  Defendants argue the USMS is not a proper Defendant in a civil action under Bivens (Doc. 47 at 12-13).  Additionally, Defendants contend Defendant Young is entitled to sovereign immunity to the extent he is sued in his official capacity, and qualified immunity to the extent he is sued in his individual capacity (*id*. at 9-12).

      1.     USMS as Defendant in Bivens action

Defendants correctly assert that a Bivens cause of action cannot be brought against a federal agency.  Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484-86, 114 S.Ct. 996, 1005-06, 127 L.Ed.2d 308 (1994).  Therefore, Plaintiff's Eighth Amendment claim against Defendant USMS should be dismissed.

      2.     Sovereign Immunity

Defendant Young claims he is entitled to immunity insofar as he is sued in his official capacity.  A suit against Defendant Young in his official capacity in tantamount to a suit against the United States.  No suit may be brought against the United States, however, unless the United States waives its sovereign immunity and consents to be used.  The United States has not waived sovereign immunity in Bivens actions.  Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 688-89, 69 S.Ct. 1457, 1461, 93 L.Ed.2d 1628 (1949); *see also* Garcia v. United States, 666 F.2d 960, 966 (5th Cir.), *cert. denied*, 103 S.Ct.73, 74 L.Ed.2d 72 (1982).  Therefore, Plaintiff's Eighth Amendment claim against Defendant Young in his official capacity should be dismissed.

      3.     Qualified Immunity

Defendant Young claims he is entitled to qualified immunity from suit in his individual capacity.  The doctrine of qualified immunity is a guarantee of fair warning.  McElligott v. Foley,

182 F.3d 1248, 1260 (11th Cir. 1999).[3] It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct.  Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002); Conn v. Gabbert, 526 U.S. 286, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); Powell v. Ga. Dep't of Human Res., 114 F.3d 1074, 1077 (11th Cir. 1998).  Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right.  McElligott, 182 F.3d at 1260 (citing United States v. Lanier, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* (citation omitted).  The Supreme Court has established a two-part test for evaluating a claim of qualified immunity.  First, the trial court must determine whether a constitutional right has been violated on the facts alleged.  Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).  The court must assess the facts in a light most favorable to the party asserting the injury.  *Id*.  Second, if a violation has been established, the court must determine whether the right was "clearly established" at the time of the event.  *Id*.  The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity.  Hope, 536 U.S. at 739, 122 S.Ct. at 2515; Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).  Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar.  Hope, 536 U.S. at 741, 122 S.Ct. at 2516.  Instead, the law merely must give Defendants "fair warning" that

---

[3]The qualified immunity analysis is identical under causes of action under 42 U.S.C. § 1983 and Bivens.  Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 1696-97, 143 L.Ed.2d 818 (1999).

their actions are unconstitutional. *Id*. In light of pre-existing law, the unlawfulness must be apparent. *Id*.; Creighton, 483 U.S. at 640.

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting Jenkins v. Talladega City Bd. of Education, 115 F.3d 821, 826 n. 4. (11th Cir. 1997)).

The Eighth Amendment imposes a duty on correctional officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1970) (quoting Hudson v. Palmer, 468 U.S. 517, 526-527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)). However, not every injury suffered by a prisoner translates into constitutional liability for the correctional officials responsible for the prisoner's safety. *Id.*, 511 U.S. at 834, 114 S.Ct. at 1977. To be held liable under the Eighth Amendment for failing to prevent harm to an inmate, a correctional official must be found to have known and recklessly disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*, 511 U.S. at 837, 114 S.Ct. at 1979. When officials become aware of threats to an inmate's safety, the Eighth Amendment proscription against cruel and unusual punishment imposes a duty to provide reasonable protection. Marsh v. Butler County, Alabama, 268 F.3d 1014, 1027 (11th Cir. 2001) ("[O]fficials, to be liable, must be aware of a substantial risk of serious harm to the inmates and not take reasonable measures to alleviate that risk.").

In order to state a claim for cruel and unusual punishment, "there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature. Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting Wright v. El Paso County Jail, 642 F.2d 134, 136 (5th Cir. 1981)). Whether an officer was aware of a risk of serious harm may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer. Farmer, 511 U.S. at 841, 114 S.Ct. at 1981. The risk of harm must have been substantial, beyond mere possibility. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam). It should be noted that a merely negligent failure to protect an inmate does not state a claim under section 1983. Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S.Ct. 668, 670,

88 L.Ed.2d 677 (1986).  Finally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer, 511 U.S. at 844, 114 S.Ct. at 1982-83.

In light of this court's previous conclusion that the undisputed facts show that Defendant Young used reasonable care in transporting Plaintiff and responding to the safety risk posed by the driver of the other vehicle, Plaintiff cannot establish an Eighth Amendment violation.  Because Plaintiff has failed to establish a constitutional violation, the court need not proceed further with the qualified immunity analysis, as Defendant's entitlement to qualified immunity has been demonstrated.  See Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999);  County of Sacramento v. Lewis, 523 U.S. 833, 840 n.5, 118 S.Ct. 1708, 1714 n.5, 140 L.Ed.2d 1043 (1998).  Thus, Defendant Young is entitled to summary judgment on Plaintiff's Eighth Amendment claim against him in his individual capacity.

V.     CONCLUSION

Upon consideration of Plaintiff's claims and the evidence submitted, the court concludes that there exists no genuine issue of material fact, and that Plaintiff has failed to establish his claims under the FTCA and Eighth Amendment.  Thus, as a matter of law, Defendants are entitled to judgment in their favor.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Defendants' Motion For Summary Judgment (Doc. 47) be **GRANTED**.

2.     That judgment be entered by the clerk in favor of Defendants.

At Pensacola, Florida, this 5th day of January 2006.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**


**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

Case No.:  4:04cv95/RV/EMT